William S. BEVINS, Appellant,

v.

PEOPLES BANK & TRUST CO., Alaska State Housing Authority, and Edward and Sandra Sanders d/b/a Nova Property Management, Appellees.

No. 7228.

Supreme Court of Alaska.

Oct. 14, 1983.

John M. Stern, Jr., Anchorage, for appellant.

Robert L. Manley, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee Peoples Bank & Trust Co.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BLAIR, Judge.*

## OPINION

COMPTON, Justice.

At issue in this appeal from an interpleader action is which party is entitled to the rental income that was collected from an apartment complex before it was sold at

---

* Blair, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

a foreclosure sale—appellant Dr. William S. Bevins, who held a second deed of trust on the property, which was fully satisfied from the proceeds of the foreclosure sale, or appellee Peoples Bank and Trust Co. ("Peoples Bank"), which held a third deed of trust on the property that was only partially satisfied from the proceeds of the sale. Both deeds contained provisions that, in the event of a default, the beneficiaries were entitled to collect the rental income from the property. The superior court granted summary judgment to Peoples Bank and awarded it the $24,854.63 that had been interpleaded, as well as prejudgment interest. We affirm this grant of summary judgment, but reverse the award of interest.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The subject property, which is known as the Carousel Apartments, consists of four apartment buildings. In 1972, each building was encumbered by a deed of trust in the amount of $57,800.00. For the sake of convenience, these deeds of trust will be referred to collectively as the "first deed of trust." In 1974, Erich Hinz sold the Carousel Apartments to Toppers, Inc. Toppers assumed the first deed of trust and gave Hinz a second deed of trust to secure its promissory note to him in the amount of $37,783.36. As discussed below, Hinz eventually assigned the second deed of trust to Bevins.

In December 1977, Toppers sold the Carousel Apartments to a third party, who gave Toppers a "wrap-around" third deed of trust in the amount of $350,000.00. This deed of trust included the amounts secured by the first and second deeds of trust. It contained a provision by which payments under it were, in part, applied to the first and second deeds of trust.

In March 1978, approximately $97,000.00 under the third deed of trust was assigned to Peoples Bank. The interest acquired by Peoples Bank in the Carousel Apartments was given priority over Toppers' remaining interest in the property. As did the second

deed of trust, the third deed of trust conferred the right and power on the beneficiary to collect the rental income from the property in the event of default.

Later in 1978, the property was transferred to Marvin Lee Niles. Niles defaulted on the payments owing under the third deed of trust. Pursuant to the clause in the third deed of trust, Peoples Bank gave notice that the rental income should be sent to it. This notice was given to the tenants of the apartments, Nova Property Management ("Nova"), which was the manager of the apartments, and Alaska State Housing Authority ("ASHA"), which was sending rent subsidy payments to Niles on behalf of some of the tenants.

In 1979, Toppers filed bankruptcy proceedings. The beneficiaries under the first deed of trust obtained permission from the bankruptcy court to schedule a nonjudicial foreclosure on April 15, 1981. It was on April 14, 1981, that Hinz assigned his interests as beneficiary under the second deed of trust to Bevins. On the day scheduled for the foreclosure, Bevins paid the beneficiaries under the first deed of trust approximately $80,000.00, which merely covered the arrearages due under the deed of trust. This averted the foreclosure on the property. Peoples Bank states that, had the foreclosure proceeded, it was prepared to bid up to $300,000.00 to purchase the property.

Niles, who still owned the property, did not cure his default under the third deed of trust. Bevins obtained permission from the bankruptcy court to initiate a nonjudicial foreclosure under his second deed of trust. At the auction, held on August 24, 1981, the apartments were purchased, subject to the first deed of trust, for $155,000.00. From these proceeds, Bevins was paid $117,279.30. This satisfied the amount of the second deed of trust ($37,783.36), the amount Bevins had paid in arrearages to the beneficiaries under the first deed of trust (approximately $80,000.00), and the costs of the foreclosure proceedings. The remaining proceeds from the foreclosure sale (approximately $37,700.00) were paid to Peoples Bank. Given that approximately $97,000.00

was assigned to Peoples Bank under the third deed of trust, it appears that approximately $60,000.00 of this interest was left unpaid, an amount greater than the amount at issue in this case.

The foreclosure sale on August 24, 1981, extinguished the second and third deeds of trust and all subordinate interests. Consequently, neither Bevins nor Peoples Bank claims any ownership in the property or rental income collected after August 24, 1981. Both parties, however, claim ownership of the rental payments collected from June 1980 up until the foreclosure sale, which consist of $3,709.00 held by ASHA and $21,343.55 held by Nova.

In October 1981, ASHA filed an interpleader action against Bevins and Peoples Bank to determine which party was entitled to the rental payments it collected. A suit filed by Bevins against ASHA and Nova for recovery of the rental payments was consolidated with the interpleader action. Nova and ASHA each deposited the funds held by them with the court and were then dismissed from the suit.

Peoples Bank and Bevins filed cross-motions for summary judgment. In August 1982, the superior court granted summary judgment to Peoples Bank. A final judgment was subsequently entered, dismissing Bevins' claims, awarding $197.92 to Nova, and awarding $24,854.63 plus interest and attorney's fees to Peoples Bank.

On appeal, Bevins contends that (1) he was entitled to the rental income as a matter of law; (2) alternatively, under an unjust enrichment theory, he was at least entitled to the value of the services he and his real estate agent rendered in connection with the property; and (3) Peoples Bank was not entitled to interest on the deposited funds.

## II. RENT CLAUSE

Peoples Bank contends that the superior court correctly decided it was entitled to the rents collected by Nova and ASHA. It asserts that its right to the rental income arises from the provision in its deed of trust

granting it the right to collect rents upon default. The provision reads as follows:

B. It is mutually agreed that:

. . . .

5. As additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. *Upon any such default, Beneficiary may* at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of the security for the indebtedness hereby secured, *enter upon and take possession of said property* or any part thereof, in his own name sue for or otherwise *collect such rents,* issues and profits, including those past due and unpaid, *and apply the same,* less costs and expenses of operation and collection, including reasonable attorney's fees, *upon any indebtedness secured hereby,* and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice or default hereunder or invalidate any act done pursuant to such notice. [Emphasis added.]

The provision in Bevins' deed of trust contains virtually identical language. As it expressly states, the rents, less costs and expenses of operation and collection, must be applied to satisfy the underlying obligation. The proceeds from the foreclosure sale completely satisfied the underlying obligation secured by the deed of trust assigned to Bevins. Peoples Bank therefore concludes that Bevins has no right to the rental income. In contrast, the proceeds from the foreclosure sale reduced, but did not completely satisfy, the obligation secured by the deed of trust assigned to Peo-

ples Bank. Accordingly, Peoples Bank concludes that it has a right to the rental income.

This argument presumes that the rent clause automatically entitles Peoples Bank to the rental income. Whether a rent clause in a deed of trust operates as an assignment of rents is a question of first impression in Alaska. The majority of courts in other jurisdictions have held that such clauses create only a security interest in the rents, which does not become operative until the mortgagee or beneficiary under the deed of trust obtains possession of the property, impounds the rents, secures the appointment of a receiver, or takes some other similar action. *E.g., Freedman's Savings & Trust Co. v. Shepherd,* 127 U.S. 494, 8 S.Ct. 1250, 32 L.Ed. 163 (1888); *Taylor v. Brennan,* 621 S.W.2d 592, 594 (Tex.1981). *See generally* G. Osborne, Mortgages § 150 (2d ed. 1970). Some courts have held that a refused demand for possession of the property is sufficient for the security interest in the rents to become operative. *E.g., Long Island Bond & Mortgage Guarantee Co. v. Brown,* 171 Misc. 15, 11 N.Y.S.2d 793, 797 (1939) (citing *Freedman's Savings & Trust Co.*). In *Miners Savings Bank v. Thomas,* 140 Pa.Super. 5, 12 A.2d 810 (1940), the mortgagee served a notice on the tenant, demanding payment of rent under a provision in the mortgage that granted the mortgagees the rents, issues and profits as security for the payment of the mortgage debt. The court stated:

> It is settled in this State that on default by a mortgagor, who has conveyed in the mortgage the rents, issues and profits of the mortgaged real estate ... the mortgagee, on giving notice to the tenant of the mortgaged premises, demanding that future instalments of rent be paid to him, is entitled to the *rents accruing after such notice* as against the mortgagor landlord, the net rents so collected to be applied to the mortgage, interest and principal, until paid in full.

12 A.2d at 813 (citations omitted) (emphasis in original).

We agree with these authorities and accordingly adopt the rule that a rent clause in a deed of trust, which allows the beneficiary to collect rents upon default to satisfy the secured debt, does not automatically assign the rents accruing after the date of default to the beneficiary. The beneficiary must take some action to acquire possession of the property or the rents before the rent clause becomes operative. If a beneficiary notifies the trustor of the default and demands payment of rent, the beneficiary "is entitled to the rents accruing after such notice as against the mortgagor [trustor] ... to be applied to the mortgage, interest and principal, *until paid in full.*" *Miners Savings Bank v. Thomas,* 12 A.2d at 813 (emphasis omitted and added).

In applying this rule to the facts before us, we believe that only Peoples Bank was entitled to the collected rents. In July and August of 1979, Peoples Bank sent letters to all of the parties involved in the payment and collection of rent, notifying them of Niles' default under the third deed of trust and directing them to send all future payments of rent to Peoples Bank. After the date of this notification, it became entitled to all accruing rents. We note that Bevins similarly gave notice of the default and demanded the collected rents. His debt, however, was paid in full in the subsequent foreclosure sale. Accordingly, there was no debt to which the rents could be applied.[1] We therefore conclude that the superior court did not err in directing the rental payments collected by ASHA and Nova to be paid to Peoples Bank.

Bevins contends that the summary judgment was improperly granted because factual issues existed that should have been determined by a trial on the merits. Summary judgment may not be granted when there are "genuine issues as to any material fact." Alaska R.Civ.P. 56(c). Civil Rule 56(e) provides in part:

---

1. We express no opinion whether a demand for rents made by a senior lienholder takes priority over the prior demand for rents made by a junior lienholder.

When a motion for summary judgment is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

In his statement of genuine issues of fact, Bevins enumerates the following factual disputes: (1) whether Niles, the owner, abandoned the property; (2) whether Peoples Bank has effectively been paid off by other sources of funds; (3) whether Bevins assumed active management, possession and control of the property; and (4) whether Peoples Bank made any attempt to assume possession and control of the property.

█ Whether Niles abandoned the property is not an issue of material fact. Assuming that Niles did not abandon the property, Peoples Bank would still be entitled to the rent because, according to the terms of the rent clause in the third deed of trust, Niles lost his right to the rental income when he defaulted. Bevins' claim is no stronger if Niles did abandon the property. Even after Niles' default, the property was maintained by Nova, whom Niles had hired to manage the property; therefore, Bevins cannot claim that his services were necessary to protect the property from disrepair.

█ Concerning the second issue, the affidavit of the vice president and loan officer of Peoples Bank states that "the amount owed . . . in regard to this deed . . . exceeds the amount [deposited with the court]." Bevins offered no opposing affidavit to support his allegation that Peoples Bank has been "effectively paid off" by other sources. In his brief on appeal, he states that "the court gave no opportunity for discovery in this matter." It is incumbent upon the parties, rather than the court, to initiate discovery. The record does not disclose any attempt at discovery during the ten months between when the complaint was filed and when the motion for summary judgment was granted. Under these circumstances, summary judgment was appropriate on this issue. As we stated in *Alaska-Canadian Corp. v. Ancow Corp.*, 434 P.2d 534, 538 (Alaska 1967), the purpose of Civil Rule 56 was "to eliminate by exposure superficial issues created by innuendo instead of direct allegations."

The last two factual issues relate to Bevins' assertion that he has a right to the rents because of "his actual possession and control of the rents prior to the . . . foreclosure sale." He contends that his affidavit and that of his real estate agent, Robert Rocker, set forth a disputed issue of material fact as to whether Bevins had assumed active management, possession and control of the property. In his affidavit, Bevins states that, through Rocker, he made a demand for rents on Nova, informed Nova that he had assumed control over the premises, and inspected the records kept by Nova. Furthermore, both Bevins and Rocker visited the premises on several occasions.

█ Assuming the issue of who had management, possession and control of the property is material to this case, the affidavits of Bevins and Rocker do not establish that the facts are in dispute. First, the owner of Nova states in his affidavit that "as the manager of Carousel Apartments, I maintained records, keys, bank accounts, maintenance services and other management responsibilities for Carousel Apartments to which Mr. Bevins never contributed in any way." Bevins confirms this statement by acknowledging that "Nova acted as the manager of the Carousel Apartments during the years at least from 1980 through August 1981." Bevins also states that "no one denies that Nova managed the properties at least from June 1980 through August 1981" and that "Nova collected the rent [and] made disbursements for day-to-day expenses. . . ." Second, Bevins concedes in his affidavit that the owner of Nova "informed us that he would not make any payments to anyone without a court order, because Peoples Bank and Trust Co. had also made a demand on him for the funds." This admission negates Bevins' assertion that Nova was managing the apartments as his agent. Last, merely visiting

the property and inspecting the records does not constitute possession and control of the property. Therefore, the court did not err in granting summary judgment to Peoples Bank.

## III. UNJUST ENRICHMENT

■ Bevins claims that under the theory of unjust enrichment he is entitled to at least a portion of the disputed funds as compensation for services he rendered to the property. A person who has been unjustly enriched at the expense of another is required to make restitution to that person. Restatement of Restitution § 1 (1937). A person is enriched if he receives a benefit; a person is unjustly enriched if the retention of the benefit without paying for it would be unjust. *Id.* comment a.

■ Bevins requests $10,000.00 as reimbursement for sixty hours of time and effort he spent in connection with the apartments, which he values at $100.00 per hour, and eighty hours of work performed by Rocker, valued at $50.00 per hour. The services performed by Bevins and Rocker can be summarized as follows: Bevins spent time communicating with the holders of the first deed of trust, made frequent visits to the property, discussed the property with his attorney and real estate agent, and attempted to contact Peoples Bank; Rocker inspected and analyzed the books and records of Nova, examined the property and remodeling construction, and discussed the property with Nova, Bevins, and an insurance broker.

Accepting the affidavits of Bevins and Rocker as true, for purposes of summary judgment, Peoples Bank asserts that the "services" were those of an investor in the second deed of trust and his agent, which benefited no one but Bevins. We agree. There being no evidence that these services increased Peoples Bank's return on the foreclosure sale or increased the rents collected, we uphold the grant of summary judgment on the issue of unjust enrichment.

## IV. PREJUDGMENT INTEREST

In addition to awarding Peoples Bank $24,854.63, which represented the rental income collected less costs to Nova, the court awarded prejudgment interest on that sum in the amount of $4,730.76. Bevins contends that this award of interest was improper because it was Nova and ASHA, not Bevins, who withheld the rents from Peoples Bank. Bevins argues that it is unjust to require him to pay interest on funds that he never possessed.

■ The purpose of awarding prejudgment interest is not to penalize the losing party, but rather to compensate the successful claimant for losing the use of the money between the date he or she was entitled to it and the date of judgment. A corollary purpose is to prevent the judgment debtor from being unjustly enriched by the use of that money. *Farnsworth v. Steiner,* 638 P.2d 181, 184 (Alaska 1981); *Anchorage Asphalt Paving Co. v. Lewis,* 629 P.2d 65, 69 (Alaska 1981). Prejudgment interest should not be awarded, however, when it is unjust to do so. *Anchorage Asphalt,* 629 P.2d at 70.

■ As a general rule, interest on funds deposited with the court in interpleader actions is not recoverable from the unsuccessful claimant because the funds were not in his or her possession, available for investment. Awarding interest would thus act as a penalty against the claimant. *Monarch Tile Sales v. Frost National Bank,* 496 S.W.2d 254, 256 (Tex.Civ.App.1973); Annot., 15 A.L.R.2d 473, 479 (1951) ("Allowance of Interest on Interpleaded or Impleaded Disputed Funds"). Some courts, however, have created an exception to this rule when a claimant had no legitimate claim to the funds. In *Means v. Porter,* 216 S.W.2d 269 (Tex.Civ.App.1949), the court awarded interest against an unsuccessful claimant who had no legitimate claim to the funds. The court reasoned that, by filing his suit, the claimant had caused the funds to be interpleaded and thereby deprived the other party of their use.

■ Applying these rules to this case, we believe that Bevins had a legitimate claim to the rental income until the time of the foreclosure sale. Therefore, the superior court erred if it awarded interest covering this period. Upon full satisfaction of his debt, however, Bevins had no reasonable claim against the funds. If he had not claimed a right to the rents from ASHA and Nova, the funds could have been turned over to Peoples Bank. Therefore, an award of interest from the date of the foreclosure sale to the date of judgment would be appropriate. The judgment does not specify the time period for which the interest was calculated; accordingly, the award of interest is reversed and the case remanded to the superior court for a recomputation of the interest portion of the judgment.

AFFIRMED in part, REVERSED in part, and REMANDED to the superior court for further proceedings consistent with this opinion.