**GENEVA WOODS PHARMACY, INC., Appellant,**

v.

**Roxanne THYGESON, Appellee.**

No. S–12388.

Supreme Court of Alaska.

April 25, 2008.

Stanley T. Lewis, Birch, Horton, Bittner and Cherot, Anchorage, for Appellant.

Richard W. Maki and David H. Shoup, Tindall Bennett & Shoup, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Roxanne Thygeson sued her former employer, Geneva Woods Pharmacy, claiming unpaid overtime. Geneva Woods had not kept accurate records of her work hours, and at trial it estimated from patient records and other documents the hours she had worked. The validity of the documentary evidence was heavily disputed. The trial court found that Thygeson had made an average of fifteen professional visits per week and had therefore worked nine and one-half hours of overtime per week for seventy-three weeks. Although Geneva Woods raises numerous factual disputes, the outcome here turns on whether the trial court clearly erred in finding that Thygeson made fifteen professional visits per week. Because it did not clearly err, we affirm.

## II. FACTS AND PROCEEDINGS

Roxanne Thygeson is a registered nurse. She was employed by Geneva Woods Pharmacy from July 2002 to May 2004 as the director of nursing for the pharmacy's home infusion department. Her job involved in-home patient care and administrative tasks. In May 2004 she voluntarily resigned her position as director of nursing, citing an inability to be a full-time nurse and a competent administrator. Thygeson continued to work as a registered nurse for Geneva Woods until she resigned completely in July 2004.

After resigning, Thygeson learned that Geneva Woods had misclassified her as an employee who was exempt from receiving overtime pay. In January 2005 Thygeson filed a complaint in superior court to recover unpaid overtime wages under the Alaska Wage and Hour Act[1] (AWHA) and the federal Fair Labor Standards Act[2] (FLSA) for a seventy-five-week claim period. Geneva Woods conceded that Thygeson had been misclassified as an exempt employee under the AWHA. Thygeson moved for partial summary judgment on the issue of liability on the AWHA claim and Geneva Woods moved for partial summary judgment on the FLSA claim.

In October 2005 the trial court granted partial summary judgment to Thygeson on the AWHA liability issue. It also granted partial summary judgment to Geneva Woods on the FLSA claim because Thygeson was an exempt employee under the FLSA.

A six-day bench trial began on February 28, 2006 to determine Thygeson's overtime compensation under the AWHA. The length of the trial was largely due to the absence of accurate records of the number of hours Thygeson worked. There was ample but confusing evidence, based on time cards, nursing notes, progress notes, witness testimony, and mileage logs, concerning the number of hours Thygeson had worked.

Thygeson submitted weekly time cards to Geneva Woods. The time cards show the days Thygeson worked and occasionally show the names of patients she visited. The trial

---

1. AS 23.10.060 (failure to pay time and a half); AS 23.10.065(a) (failure to pay minimum wage); AS 23.10.100 (failure to keep pay records).

2. Federal Fair Labor Standards Act, 29 U.S.C. §§ 201–19 (2000).

court found that Thygeson's time cards are not an accurate record of the number of hours she worked because Geneva Woods had instructed Thygeson to write "eight hours per day" on her time cards regardless of how many hours she actually worked. Geneva Woods did not challenge this finding at trial and does not dispute it on appeal.

Thygeson also prepared nursing notes, progress notes, and mileage logs. She created either a nursing note or a progress note after every patient visit. Her notes typically, but not always, identified the patient and stated how much time she spent with the patient. Thygeson used her own car to make in-home patient visits and kept the mileage log so she could be reimbursed for travel.

Geneva Woods and Thygeson agreed at trial that the time cards, nursing notes, progress notes, and mileage logs showed that the average number of hours Thygeson worked per professional visit was three hours, not including administrative time. Geneva Woods and Thygeson agree that Thygeson's administrative duties account for an additional ten percent of her time.

Twelve witnesses testified. Depositions of three witnesses, who did not testify at trial, were also before the court. The witnesses included Geneva Woods's vice president of finance, payroll manager, nurses, customers, and patients. Thygeson also testified at length. The trial court "fully found Thygeson's testimony credible that she was working in excess of 40 hours per week ... and generally found her to be credible where her testimony was supported ... by the testimony of other witnesses."

Relying on witness testimony, time cards, nursing notes, progress notes, and mileage logs, the trial court found that Thygeson had made fifteen professional visits per week for seventy-three of the disputed weeks. It also found that Thygeson's mileage logs were representative of the average number of professional visits completed per week; that the mileage logs supported an inference of fifteen professional visits per week; and that witness testimony and other documents supported the accuracy of the mileage logs.

The court did not consider the nursing notes and progress notes, created by Thygeson after patient visits, to be the best evidence of how many professional visits Thygeson made each week. The trial court found that the notes provided some evidence of the amount of overtime that Thygeson worked but were not conclusive because the notes were internally inconsistent and occasionally showed Thygeson "seeing the same patient on the same day during overlapping but different time intervals." In general, the trial court found that "the records offered by the parties were not reliable for the purposes of establishing the plaintiff's hours of work."

Geneva Woods had paid Thygeson an annual base salary of $66,500, an on-call salary of four dollars per hour for evening and weekend work, an education allowance of $1,500 per year, and a car allowance. The base salary was intended to pay Thygeson for eight hours of work per day, five days per week. The on-call pay was in addition to her base salary. Both parties agree that Thygeson's hourly overtime wage was $47.95 for hours for which Thygeson was not paid for being on-call and $43.95 for hours for which Thygeson was previously paid for being on-call.

■ The trial court calculated Thygeson's overtime award by finding that Thygeson worked forty-nine and one-half hours per week for seventy-three weeks of the seventy-five-week claim period. Put another way, the court found that Thygeson saw fifteen patients per week, each of whom required three hours of work, and performed administrative tasks that increased her hours by ten percent. The claim period also included two weeks during which Thygeson attended a conference. The trial court found, and Geneva Woods does not contest, that Thygeson worked twenty hours of overtime per week during the two conference weeks. The trial court ultimately awarded Thygeson $32,397.33 in unpaid wages, $7,313.24 in prejudgment interest, $32,397.33 in liquidated damages,[3] and $156,390.56 in costs and attorney's fees.

Geneva Woods appeals.

---

**3.** Geneva Woods did not contest the liquidated damages claim at trial; it did not plead a defense

## III. DISCUSSION

### A. Standard of Review

Geneva Woods argues that the finding Thygeson worked nine and one-half hours of overtime per week is clearly erroneous and that it presented sufficient evidence either to show that Thygeson did not work overtime or to negate the reasonableness of her overtime claim.

 We review the trial court's factual determinations, including those pertaining to the credibility of a witness, for clear error.[4] We will conclude that there was clear error only if after a thorough review of the record, we come to a definite and firm conviction that a mistake has been made.[5]

### B. The Trial Court Did Not Clearly Err in Finding that Thygeson Made Fifteen Professional Visits Per Week.

The AWHA requires an employer to keep a record of "the hours worked each day and each workweek by each employee."[6] Because Geneva Woods failed to keep accurate records of the number of hours Thygeson worked, the trial court calculated Thygeson's overtime hours by counting the average number of professional visits she made per week. Although Geneva Woods and Thygeson disputed many issues, including the validity of the documentary evidence, the dispositive dispute on appeal is whether the trial court erred in determining how many professional visits Thygeson made each week. The trial court calculated that Thygeson made fifteen professional visits per week, resulting in nine and one-half hours of overtime per week.

 When an employer maintains accurate records of the number of hours an employee works, the employee has the burden of proving that she was not properly compensated.[7] But if there are no accurate records, per *Barios v. Brooks Range Supply, Inc.*, the burden is on the employer to disprove the employee's claim for unpaid overtime wages:

> When an employer fails to keep records, an employee may prove her claim if she presents sufficient evidence from which the court may draw a "just and reasonable inference." If the employee meets this minimum threshold, the burden shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."[8]

Geneva Woods concedes that it failed to keep accurate records; that the *Barios* and *Anderson v. Mt. Clemens Pottery Co.* burden-shifting standard applies;[9] that Thygeson is only required to show sufficient evidence to allow the trial court to draw a just and reasonable inference that overtime wages are due;[10] and that Thygeson met the minimal burden of proof required by *Barios* and *Mt. Clemens Pottery Co.*[11] As a result,

of good faith. In an action to recover unpaid overtime wages "[AS] 23.10.110(d) gives discretion to the court to decline to award liquidated damages if the defendant shows by clear and convincing evidence that the defendant acted in good faith." *Fred Meyer of Alaska, Inc. v. Bailey*, 100 P.3d 881, 887 (Alaska 2004).

4. *Barios v. Brooks Range Supply, Inc.*, 26 P.3d 1082, 1085, 1087 (Alaska 2001) ("Witness credibility determinations are left to the trial court." (citing *American Computer Inst., Inc. v. State, Student Loan Corp.*, 995 P.2d 647, 651 (Alaska 2000))).

5. *Id.*

6. AS 23.10.100(a).

7. *Barios*, 26 P.3d at 1086; *See also Hutka v. Sisters of Providence in Wash.*, 102 P.3d 947, 954–55 (Alaska 2004).

8. *Barios v. Brooks Range Supply, Inc.*, 26 P.3d 1082, 1086 (Alaska 2001) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (superseded by statute on other grounds as stated in *Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C.Cir.1972))) (footnotes omitted).

9. *Id.* at 1086; *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

10. *Barios*, 26 P.3d at 1086 (discussing *Mt. Clemens Pottery Co.*, 328 U.S. at 687, 66 S.Ct. 1187); *see also Hutka*, 102 P.3d at 954–55.

11. *Barios*, 26 P.3d at 1086; *Mt. Clemens Pottery Co.*, 328 U.S. at 687–88, 66 S.Ct. 1187.

Geneva Woods correctly concedes that Thygeson met the minimal evidentiary threshold required to shift the evidentiary burden to Geneva Woods. Thygeson testified that she performed

Geneva Woods's appeal is based on a challenge to the trial court's finding that Thygeson worked nine and one-half hours of overtime per week (the consequence of finding she made fifteen professional visits per week) during the seventy-three-week claim period.

**1. Geneva Woods did not come forward with evidence of the precise amount of work Thygeson performed and did not negate the reasonableness of Thygeson's overtime claim.**

█ To establish the number of hours Thygeson worked, Geneva Woods called two witnesses at trial and produced over 18,000 documents during discovery. Kim Warner, Geneva Woods's Vice President of Finance, testified that the documents, which included Thygeson's "payroll records, the time sheets ... nursing notes, ... progress notes ... [and] other documents ... related to patient care," were used to count how many professional visits occurred during the claim period. Warner's spreadsheet summary of the documentary evidence showed that Thygeson saw 840 patients during the claim period. If it were accurate, a count of 840 professional visits during the seventy-three-week period would show that Thygeson did not work overtime.[12]

Geneva Woods argues that its patient visit summary is accurate evidence of the number of professional visits Thygeson made because Geneva Woods did not "lose, misplace, or fail to produce even a single nursing note" and Thygeson "acknowledged completing a nurs-

ing note for every patient visit she made during the claim period." Geneva Woods's argument is flawed because it presupposes the accuracy of the documents used to create the patient visit summary and mischaracterizes the meaning of Thygeson's acknowledgment at trial. Thygeson's "acknowledgment," that she completed a nursing note or progress note after every patient visit, is not an acknowledgment that the patient visit summary is accurate nor is it a concession that the source documents used to create the summary are accurate. In fact, there was ample evidence at trial about the general inaccuracy of the nursing notes and progress notes.

Geneva Woods's argument also misconstrues Thygeson's acknowledgment as an acknowledgment of the accuracy of the criteria Warner used to determine whether a patient visit occurred. Thygeson, using Warner's patient visit summary and her own standards, calculated that she made 1,104 patient visits during the claim period.[13] Warner testified that her count did not include fifty-four possible professional visits that Thygeson made because the visits did not generate nursing notes. The trial court found that Geneva Woods's patient visit summary was inaccurate because the progress notes used to create the summary were "inconsistent and internally poor."

Based on our review of the nursing note and progress note evidence we agree that it is inconsistent. We therefore hold that the trial court did not commit clear error by

---

administrative tasks in addition to seeing at least fifteen patients per week. And the mileage logs she kept support her contention that she saw on average fifteen patients per week.

The trial court "fully found" Thygeson's testimony that she worked in excess of forty hours per week credible and generally found her testimony credible where it was supported by documentary evidence or other witnesses.

12. Because the trial court calculated that the average patient visit lasts three hours and that administrative time increases the time Thygeson works by ten percent, 840 professional visits over seventy-three weeks is roughly the equivalent of seventy-three thirty-eight-hour work weeks.

13. During rebuttal at oral argument on appeal, Geneva Woods's attorney stated that "I believe that the evidence is [uncontested] that [Thygeson]

testified that if she saw a patient she inserted in- and out-times." If counsel thought Thygeson had not contested Geneva Woods's contention that only nursing notes and progress notes with in- and out-times represent professional visits, counsel was mistaken. Thygeson testified at trial that "a patient name and a time-in and time-out, or patient name, and ... a fax, [would count] ... as a visit." During closing arguments, Thygeson's attorney argued that the criteria used to count the number of patient visits should include nursing notes without in- and out-times. Thygeson's attorney also cross-examined Warner on the criteria she used to count professional visits and questioned the validity of Warner's criteria for counting nursing notes.

concluding that Geneva Woods's nursing note analysis did not provide sufficient evidence to establish the precise number of professional visits made by Thygeson.

The second witness Geneva Woods called was Janet Arens, Thygeson's supervisor. Arens testified that her supervision of Thygeson "was very loose," and that she thought Thygeson saw between three and twenty patients per week with an average patient load between ten and twelve patients per week. The trial court found that "[Arens's] analysis while providing some useful information is not completely accurate" and "is not adequate ... to determine 'the precise amount of work performed' by Thygeson." Because the witness admitted that her supervision was "very loose," the court did not err in characterizing this evidence as not legally sufficient to rebut Thygeson's overtime claim. This evidence is neither precise enough nor conclusive enough to show that Thygeson's wage claim is unreasonable.

### 2. The trial court's factual findings are not clearly erroneous.

▪ Based on the appellate record, we are unconvinced that the trial court committed clear error in finding that Thygeson worked nine and one-half hours of overtime per week. The record does not leave us with "a definite and firm conviction that a mistake has been made." [14] The mileage logs and Thygeson's testimony support the trial court's finding that Thygeson saw fifteen patients per week. And Geneva Woods's patient visit summary and witness testimony do not demonstrate that the finding of fifteen patient visits was clearly erroneous. [15]

We hold that Geneva Woods failed to meet its burden under *Barios* and did not come forward with more or better evidence than Thygeson that more accurately showed the number of hours she worked. [16] We also hold that the trial court did not commit clear error by finding Thygeson's testimony credible when the testimony is "supported by some documentary evidence."

**14.** *Barios*, 26 P.3d at 1085.

**15.** The trial court and Thygeson questioned why Geneva Woods failed to introduce its billing rec-

### IV. CONCLUSION

We therefore AFFIRM.

BRYNER, Justice, not participating.

ords to show the precise number of hours Thygeson worked.

