HULETT–McLEAN, INC., Respondent,

v.

CHRIS KAYE PLASTICS
CORP., Appellant.

No. 54398.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 13, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 3, 1991.

Application to Transfer Denied
Feb. 7, 1991.

Burton M. Greenberg, Karen Alaine Greenberg, Lawrence Joseph Fleming, St. Louis, for appellant.

Robert S. Allen, Helmet Star, St. Louis, for respondent.

CRIST, Judge.

This is a contingent fee contract case. On December 13, 1983, respondent Hulett–McLean, Inc. (buyer's representative) and appellant Chris Kaye Plastics Corp. (buyer) entered into a contract whereby buyer's representative agreed to represent buyer and perform financial consulting work in connection with the acquisition of the Jim Walter Plastics plant in Union, Missouri, a division of the Jim Walter Corporation (seller). The contingency fee contract was to expire on December 13, 1984. The sale was consummated on January 30, 1985. Buyer refused to pay the contingent fee of $54,320 as based upon the acquisition price of the assets acquired by the buyer from

seller. The trial court found the fee should have been paid. We agree and affirm.

Our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo.banc 1976). We sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.*

Buyer's representative operated a financial consulting service which assisted other companies with the acquisition or sale of going businesses. The contract provided buyer's representative would assist buyer in structuring a satisfactory acquisition, preparing a letter of intent, and negotiating the acquisition through to a conclusion. It also provided that when and if buyer acquired the plastics plant, a fee would be paid on a percentage of the total sales price.

Beginning in December 1983, buyer's representative commenced its efforts toward structuring a satisfactory acquisition. Among these efforts were the review of seller's financial reports, conferences with seller's representatives in Florida and Missouri, and conferences with buyer's president, attorneys and accountants. Buyer's representative also assisted in the preparation of the letter of intent dated December 27, 1983, and assisted in the preparation of an option contract dated February 14, 1984, which was entered into by the parties to the sale.

When a dispute arose between buyer and seller over the valuation of the inventory at the Union, Missouri plant, buyer's representative conducted a special inventory study along with employees of buyer which showed the seller's inventory was overstated by approximately $400,000. In July 1983, buyer instructed buyer's representative to demand the return of buyer's $10,-000 option fee. Seller rejected this request; however, seller made a material reduction in the value of its inventory. In September 1984, buyer instructed buyer's representative to negotiate the acquisition to a conclusion.

Buyer's representative participated in meetings and reviews of contract drafts prepared by seller and proposed revisions suggested by buyer and its attorney. Because buyer determined it did not wish to accept the union labor contract at the Union, Missouri plant, buyer requested buyer's representative to negotiate changes in the acquisition. These changes protracted the negotiations. Ultimately, a meeting was scheduled in Florida on December 12, 1984, to conclude the transaction. Buyer's president, attorney, and buyer's representative traveled to Florida for the negotiations. On the evening preceding the meeting with seller's representatives, buyer's representative, buyer's president and buyer's attorney met and spent several hours modifying the proposed agreement to be presented to seller. These proposed changes were rejected by seller's representatives and buyer elected not to negotiate further at that time.

Shortly thereafter, however, buyer and its attorneys returned to Florida and dealt directly with seller's representatives. On January 30, 1985, buyer contracted with the seller for buyer's acquisition of the assets of the plastics plant at a purchase price of $1,108,000. The acquisition was concluded with buyer assenting to the terms that had been negotiated prior to buyer's December 12 changes.

On appeal, buyer asserts its obligation to pay a commission to buyer's representative expired with the contract on December 13, 1984. But not so. The contract between buyer and buyer's representative did not condition buyer's representative's fee on the sale or closing taking place within the contract period. Instead, it clearly states that when buyer acquired the plastics plant, buyer would pay buyer's representative a fee at closing. Unless the contract states otherwise, an agent is entitled to his fee for services performed during the contract period, even though the contingency occurs after termination. *Baum Associates, Inc. v. Society Brand Hat Co.*, 340 F.Supp. 1158, 1163 (E.D.Mo. 1972), *aff'd* 477 F.2d 255 (8th Cir.1973). Buyer's representative accomplished all that it had within its power to do to earn its commission during the term of the contract. *Mathews v. Knoll Associates*, 388 S.W.2d 529, 532–3 (Mo.App.1965).

Of course, the parties may contract as they see fit regarding fees or commissions, regardless of the relationship. *E.F. Higgins, Inc. v. Kuhlman Die*, 663 S.W.2d 318, 321 (Mo.App.1983). The contract between buyer and buyer's representative did not condition buyer's representative's fee on the sale or closing taking place within the contract period. Instead, it clearly states that if and when buyer acquired the plastics plant, buyer would pay buyer's representative a fee at closing. Point denied.

■ For its second point, buyer asserts the trial court erred in finding buyer's representative had performed or substantially performed all of its duties under the agreement. According to the contract, buyer's representative was employed to "assist" in negotiating the acquisition through to a conclusion. It did that. Buyer's representative assisted in negotiating a binding option agreement. It assisted in bringing the final negotiations to a conclusion. Buyer and buyer's representative had gone to Florida to conclude the matter. However, buyer, through no fault of buyer's representative, added conditions not acceptable to seller. Six weeks later, buyer entered into the contract under similar terms to those originally contemplated at the December meeting. There is ample evidence to support the trial court's finding that buyer's representative had performed or substantially performed all of its duties under the agreement.

■ In its third point, buyer asserts the trial court improperly excluded buyer's offer of proof regarding buyer's representative's subsequent use of contract language to avoid a dispute with a reneging principal. Buyer argues the language of buyer's representative's subsequent contracts with other parties is relevant to show a defect in the allegedly ambiguous contract between these parties. However, buyer's point is not valid because the language of the contract in question was not ambiguous. In the absence of ambiguity, extrinsic evidence may not be used to construe the meaning of a contract. *Schnuck Markets, Inc. v. Transamerica Ins. Co.*, 652 S.W.2d 206, 212[4] (Mo.App.1983). The trial court found that the contract did not condition payment upon closing or on the execution of a contract of acquisition by December 13, 1984. In so finding, the court necessarily held the agreement unambiguous. Point denied.

■ Finally, buyer asserts the trial court erred in admitting evidence of the value of the entire Jim Walter Plastics plant and in basing its judgment on the entire sale price, in that such evidence was beyond the scope of the pleadings and beyond the scope of the contract pled.

Rule 55.33(b) provides in part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

The contract calls for buyer's representative to assist buyer "in acquiring either part or all of the Bell Dor–Lite Division of Jim Walter Plastics in Union, Missouri." The Jim Walter plant in Union, Missouri, makes two types of products: injection molding and Dor–Lite products. Buyer thus argues that buyer's representative's commission should only be based on the acquisition of the Dor–Lite assets. However, there is little question from the contract and the evidence that buyer agreed to compensate buyer's representative for assisting in the acquisition of the entire Jim Walter Plastics plant. The intention of the parties is key in the interpretation of a contract. *N.B. Harty General Contractors, Inc. v. West Plains Bridge & Grading Co.*, 598 S.W.2d 194, 196[1] (Mo.App. 1980).

Judgment affirmed.

GARY M. GAERTNER, P.J., and BRADY, Senior Judge, concur.