**Larry J. MOORE, Respondent,**

v.

**Jack PRINDABLE, and James P. Walsh, and Lillian M. Walsh, Appellants.**

No. 58880.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 9, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 21, 1991.

Application to Transfer Denied
Oct. 16, 1991.

James J. Sauter, St. Louis, for appellants.

Edward C. Cody, St. Louis, for respondent.

GARY M. GAERTNER, Presiding Judge.

In this appeal from an interpleader action, appellants, Jack Prindable, James Walsh and Lillian Walsh, claim error by the trial court in its finding respondent, Larry Moore, was entitled to $20,800.00 in commissions plus prejudgment interest for acting as the broker in the sale of certain unimproved real estate. We modify the judgment, affirm the award of commissions and reverse the judgment as to its award of interest.

In 1986, respondent was a licensed real estate broker in Missouri working for Southland Corporation as a real estate representative. In the course of his employment, respondent learned of a parcel of unimproved real estate on Old Halls Ferry Road in St. Louis County. Southland Corporation had indicated interest in this parcel of real estate, and had even written a contract on the property, but later chose a different site.

In December of 1986, respondent left Southland Corporation to work as a real estate broker. Through former co-workers at Southland Corporation, respondent became acquainted with representatives of Chouteau Petroleum. Like Southland Corporation, which operates 7–11 Markets, Chouteau Petroleum runs similar Shop–N–Go markets.

On February 13, 1987, respondent presented a listing contract to appellants, the owners of the real property on Old Halls Ferry Road. Although the listing contract contained the letterhead of PNM Realty Company, a corporation formed by associates of respondent, respondent is clearly listed as the broker in the body of the contract and on the signature line. Under the terms of the listing contract, respondent was to receive eight percent of the gross sales price for negotiating a sales contract for the real estate. This commission was to "irrevocably vest and be payable upon the closing of said real estate."

Later in the day of February 13, 1987, respondent produced Chouteau Petroleum as the buyer for the real estate. Respondent prepared a purchase contract on the Old Halls Ferry property for a gross sales price of $260,000.00. This contract was signed by the parties. Respondent also prepared an amendment to the purchase contract, waiving certain conditions. The amended purchase contract was signed by the parties on or about August 12, 1987. On January 5, 1988, more than a month after the expiration of the listing contract with respondent, the parties closed on the real estate. Respondent did not attend the closing.

Shortly after the closing, respondent attempted to collect his commission from Missouri Title Company, who was escrowing the original escrow money. The evidence reveals respondent was unable to collect the commission because appellant

Prindable had Missouri Title hold up the commission check. According to respondent, appellant Prindable told respondent he was only going to pay respondent half, that he normally didn't pay commissions that large and he generally "beat the broker" out of half, especially in a deal he could have done himself.

On January 12, 1988, respondent filed a petition in the Circuit Court of St. Louis County seeking his commission. In the petition, both appellants and Missouri Title Company were named as defendants. On May 5, 1988, Missouri Title filed a counterclaim/cross-claim seeking interpleader. Respondent and appellants consented to the interpleader "on condition that ... Missouri Title Company shall recover $889.50 from said funds as and for its attorneys' fee and costs." Missouri Title deposited $19,910.50 into the court on August 1, 1988. This amount reflected the eight percent commission of $20,800.00, less the $889.50 in attorneys' fees and costs.

The cause went to trial on April 5, 1990, and on April 26, 1990, the trial court handed down its order in favor of respondent for a total judgment of $25,121.20. This figure represented commissions of $20,800.00 plus $4,321.20 in interest. This appeal followed.

Appellants' first point on appeal raises three claims of error. Appellants claim the trial court erred in finding in favor of respondent because: 1) Respondent was not the "efficient or procuring force" of the sale; 2) The listing contract was between PNM Realty and the appellants and not with respondent; and 3) The listing contract expired before the closing of the deal. We will affirm the decision of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Hulett–McLean, Inc. v. Chris Kaye Plastics Corp.,* 799 S.W.2d 618, 619 (Mo.App., E.D.1990).

Appellants' first two claims merely involve questions of fact. The trial court obviously believed the testimony of the respondent and rejected the testimony of appellant Prindable.[1] This court defers to the trial court's determination of a witness's credibility and the weight to be given their testimony. *In Re Estate of Ross,* 790 S.W.2d 514, 516 (Mo.App., E.D.1990). There was substantial evidence respondent was the efficient and procuring force of the sale and the contract was with respondent, not PNM Realty.

Appellants also claim the contract required the closing occur within the time of the listing contract for the respondent to be entitled to his commission. This is based on the following clause in the listing contract.

If, during the term of said agency, or within (90) days thereafter, the said property be sold to or exchanged with any person procured by BROKER the full commission will be due and payable at closing.

The parties agree the 90 day period expired on November 25, 1987.

We disagree that this clause required the closing on the property be held within the time of the listing contract. The time requirement in the contract clearly applies to the sale or exchange of the property, not to the closing. We believe the respondent earned his commission when he produced the purchaser and the purchaser entered into an earnest money agreement with the appellants. When the contract closed, the right to the commission vested. This holding is consistent with that of other states. *Dean Vincent, Inc. v. Chef Joe's, Inc.,* 273 Or. 814, 541 P.2d 469, 471 (en banc 1975); *Covino v. Pfeffer,* 160 Conn. 212, 276 A.2d 895 (1970). Point denied.

Appellants next claim that, because this is an interpleader case, the trial court erred in awarding prejudgment interest and in awarding judgment against the appellants instead of against the fund. We agree.

As noted above, Missouri Title deposited $19,910.50 into the court. This amount represented the $20,800.00 due on commissions less Missouri Title's attorneys' fees and costs of $889.50. This sum was later placed into an interest bearing account at the request of the parties. At the time of

---

1. Appellants, James Walsh and Lillian Walsh, did not testify at trial.

judgment, the amount in that account came to $21,444.14. In its judgment, the court award respondent his $20,800.00 in commissions plus interest of $4,321.20. The total amount of the judgment, thus, exceeded the amount in the fund by more than $3,600.00.

 In *Bevins v. Peoples Bank and Trust Co.*, 671 P.2d 875 (Alaska 1983), the Alaska Supreme Court addressed the issue of awarding prejudgment interest in interpleader actions:

> The purpose of awarding prejudgment interest is not to penalize the losing party, but rather to compensate the successful claimant for losing the use of the money between the date he or she was entitled to it and the date of judgment. A corollary purpose is to prevent the judgment debtor from being unjustly enriched by the use of that money.... Prejudgment interest should not be awarded, however, when it is unjust to do so....
>
> As a general rule, interest on funds deposited with the court in interpleader actions is not recoverable from the unsuccessful claimant because the funds were not in his or her possession, available for investment. Awarding interest would thus act as a penalty against the claimant.

*Bevins*, 671 P.2d at 881. We also note that, in an interpleader action, the judgment is against the fund, not the other parties to the action. *Winterton v. Van Zandt*, 397 S.W.2d 693, 695 (Mo.App., K.C.Ct.App.1965). This presents yet another reason for denying prejudgment interest awards against other parties in interpleader actions. *Id.*

Finally, the funds have been in the registry of the court for almost the entire time for which interest was awarded. As a general rule, interest should never be awarded for time a fund is on deposit in the registry of the court. *Land Clearance for Redevelopment Authority of the City of St. Louis v. Zitko*, 386 S.W.2d 69, 84 (Mo. banc 1964).[2] The trial court erred in awarding prejudgment interest in this case.

Likewise, the trial court erred in awarding judgment against the appellants. As noted above, an interpleader action is against the fund, not the other parties to the action. *Winterton*, 397 S.W.2d at 695. The order of the trial court should be modified to award judgment against the fund and not against the appellants.[3]

The order of the trial court is modified to grant the respondent judgment against the fund instead of against the appellants. The order is reversed as to interest and affirmed in all other respects.

CRIST and AHRENS, JJ., concur.

---

**2.** Under certain conditions, prejudgment interest may be awarded against a stakeholder for the time prior to which the stakeholder deposited the funds into the court. See *Gelfgren v. Republic National Life Ins. Co.*, 680 F.2d 79, 82 (9th Cir.1982).

**3.** An award against the other party in an interpleader action is permitted, however, where, as in this case, attorneys' fees have been paid to the stake holder out of the fund. In such cases, the court has discretion to allow the successful claimant to collect these attorneys' fees from the unsuccessful claimant. See *Mix v. Broyles*, 567 S.W.2d 696, 699 (Mo.App., K.C.D.1978). In the present case, the court made no such award of attorneys' fees to the respondent, nor has the respondent appealed the lack of such an award of attorneys' fees in the court's judgment.