**WALLY & CO., L.C., Appellant,**

v.

**BRIARCLIFF DEVELOPMENT CO., et al., Respondents.**

No. WD 74267.

Missouri Court of Appeals, Western District.

May 22, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 2012.

Application for Transfer Denied Aug. 14, 2012.

John W. Shaw and Neil L. Johnson, Kansas City, MO, for Appellant.

Jason M. Hans, Kansas City, MO, for Respondent, Briarcliff Development Co.

Russell J. Keller, Kansas City, MO, for Respondent, DeBruce Grain, Inc.

Scott M. Brinkman, Kansas City, MO, for Respondent, UMB Bank, N.A.

Before Division II: VICTOR C. HOWARD, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

MARK D. PFEIFFER, Judge.

Wally & Co., L.C., appeals the judgment of the Circuit Court of Clay County, Missouri, granting summary judgment in favor of Briarcliff Development Company on Wally & Co.'s claim for a commission for brokering a lease renewal amendment agreement between Briarcliff Development Company and the tenant, DeBruce Grain, Inc.

We reverse and remand with instructions to the Circuit Court of Clay County, Missouri, to enter judgment in favor of Wally & Co., L.C., consistent with our ruling today.

### Factual and Procedural Background[1]

In 1998, DeBruce Grain, Inc. ("Tenant"), entered into a ten-year lease for office space with Briarcliff Development Company ("Landlord"). The lease term was scheduled to expire on May 31, 2009. Under the terms of the lease, Tenant possessed an option to renew the lease for an additional ten-year term with rent calculated under a renewal term formula. To exercise the option to renew, Tenant was required to exercise the renewal option by notifying Landlord of Tenant's intention to renew the lease on or before June 5, 2008. Tenant did not, however, exercise the option to renew within the option period. Instead, in August 2008, Tenant hired Wally & Co., L.C. ("Broker"), to represent Tenant as a broker in Tenant's search for rentable commercial premises in the Kansas City area.

In September 2008, on behalf of Tenant, Broker sent Landlord a Request for Proposal on renewing Tenant's lease. Simultaneously, Broker also sent Landlord a Broker's Commission Letter Agreement—the terms of which Landlord agreed to on October 6, 2008—outlining Broker's right to receive a broker's commission from Landlord if Tenant entered into an agreement to continue to lease office space from Landlord in the Briarcliff I Building after the original lease term expiration on May

---

1. At oral argument, the parties agreed that there are no material facts in dispute, and the only dispute is whether the undisputed material facts demonstrate, as a matter of law, that Wally & Co., L.C. (i.e., the broker) has or has not earned a commission.

31, 2009. The Broker's Commission Letter Agreement stated, in pertinent part:

*In the event that Tenant completes a Lease and/or Lease Amendment for office space in this Building,* which has been presented through [Broker] you agree to pay [Broker] a commission equal to three percent (3%) of the aggregate gross rental consideration of the first five (5) years of the lease term and one and one-half percent (1.5%) of the aggregate rental consideration of any additional lease term. Fifty percent (50%) of such Commission will be earned and payable to [Broker] at the time a written agreement is executed between Landlord and Tenant. The remaining fifty percent (50%) of such Commission will be earned and payable upon lease commencement. *This agreement shall remain in effect for 240 days or until negotiations cease,* whichever is longer.

(Emphasis added.)

On December 1, 2008 (i.e., within 240–day broker's commission time period), Broker helped negotiate an agreement between Landlord and Tenant whereby the parties to the original lease unconditionally agreed to renew and extend the term of the original lease by an additional ten-year lease term commencing after the original lease term expired in May 2009 ("12/1/08 Lease Amendment").[2] And, the 12/1/08 Lease Amendment delineated the *binding* process by which the base rent for the renewal term would be calculated ("base rent calculation process"). The base rent calculation process was two-fold and contemplated a process with a timeline that could extend past the expiration of the original term of the lease (i.e., outside the 240–day broker's commission time period).

Notably though, the 12/1/08 Lease Amendment: (1) unconditionally obligated the Landlord and Tenant to a ten-year extension to the original lease term; and (2) unconditionally obligated the Landlord and Tenant to complete the base rent calculation process and be bound by the base rent figure that the base rent calculation process produced. In other words, after entering into the 12/1/08 Lease Amendment, there was no longer a question *if* the lease would be renewed or *how* the base rent of the renewal term would be calculated. The only question remaining was *what* rental figure the base rent calculation process would produce.

In part one of the base rent calculation process, the Tenant would prepare a base rent proposal to Landlord, and the parties had a defined amount of time to attempt to negotiate and agree on the base rent figure. If part one of the base rent calculation process was unsuccessful, then the Landlord and Tenant were *required* to participate in an arbitration process that could involve the participation of as many as three arbitrators. Again, the arbitration process had strict time deadlines for completion. Upon completion of the base rent calculation process:

Landlord and Tenant *shall* promptly thereafter execute a written agreement establishing the aforesaid Base Rent, which rent *shall* be binding upon the parties. . . .

(Emphasis added.) Consistent with the *requirement* of the terms of the 12/1/08 Lease Amendment, the Landlord and Tenant participated in the base rent calculation process—which required both parts of the process and all three arbitrators—and the binding base rent was calculated.

2. In a later document executed by the Landlord and Tenant—Third Amendment to Office Lease—the parties to the lease referred to the 12/1/08 Lease Amendment as follows: "The Original Lease was previously amended by . . . Agreement dated as of December 1, 2008."

Consistent with the *requirement* of the terms of the 12/1/08 Lease Amendment, the parties thereafter (on July 31, 2009) executed a written agreement establishing the base rent of the renewal ten-year lease term.

Broker then sought its commission from Landlord, and Landlord refused to pay the commission, writing to Broker that "[w]e would never have agreed to this [lease renewal] if a broker had brought it to us."[3] Broker filed a lawsuit against Landlord, alleging alternative counts of breach of contract, quantum meruit, promissory estoppel, and enforcement of a real estate broker's lien.

After both parties amended their pleadings, both parties eventually filed motions for summary judgment. The crux of Landlord's summary judgment argument was that, by its terms, the Broker's Commission Letter Agreement expired on June 3, 2009; the written agreement itemizing the base rent for the renewal term was not signed by the parties to the lease until July 31, 2009; thus, because Broker had not earned the right to a commission until *after* June 3, 2009, Broker was not entitled to a commission. Conversely, the crux of Broker's summary judgment argument was that Broker had earned its commission when the 12/1/08 Lease Amendment was entered into.

The Circuit Court of Clay County, Missouri ("trial court"), after reviewing the motions for summary judgment and hear-ing argument of counsel, granted summary judgment for Landlord. In its judgment, the trial court expressly noted that: (1) the Broker's Commission Letter Agreement remained in effect until June 3, 2009, "or until negotiations cease, whichever is longer"; (2) negotiations between Landlord and Tenant ended on March 3, 2009; and (3) therefore, the "undisputed evidence demonstrates that Plaintiff did not *earn* a commission within the time period set forth in the [Broker's Commission Letter Agreement]." (Emphasis added.)

Broker filed a motion for a new trial and reconsideration of the trial court's judgment, which was denied. Landlord then filed a motion to amend the trial court's judgment to include an award of attorney's fees under section 429.625, which the trial court granted, awarding Landlord $80,159.52 in fees and costs.

Broker appeals.

### Point I—Summary Judgment

In its first point on appeal, Broker argues the trial court erred in granting summary judgment to Landlord. We conduct a *de novo* review of the record on appeal from the grant of a summary judgment. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

The criteria on appeal for testing the propriety of summary judgment are no

---

**3.** In the arbitration part of the base rent calculation process, sometimes referred to as a "baseball arbitration process," Tenant's arbitrator valued the leased premises at $17 per square foot; Landlord's arbitrator valued the leased premises at $22 per square foot; and, the third arbitrator valued the leased premises closest to the Tenant's arbitrator's valuation, thereby requiring the third arbitrator to choose Tenant's arbitrator's calculation—$17 per square foot. Thus, it would appear that this statement by Landlord is suggesting that if any broker had approached Landlord and proposed a lease with a base rent of $17 per square foot for the subject leased premises, the Landlord never would have agreed to such a proposal and would thus never have paid a broker a commission for bringing such a proposal to Landlord. As we explain in our ruling today, however, Landlord *did* agree to this base rent proposal via the binding base rent calculation process terms of the 12/1/08 Lease Amendment.

different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*Id.* (citations omitted).

### *When is a Broker's Commission "Earned"*

■ The dispositive legal issue in this case is when a broker "earns" a commission. This was the issue focused upon and argued about by both parties to the trial court and the issue that the trial court relied upon in granting summary judgment in favor of the Landlord. Ultimately, the trial court based its summary judgment upon its conclusion that Broker had not "earned" the commission before the expiration of the Broker's Commission Letter Agreement between Broker and Landlord. We find several cases instructive on this issue.

■ In *Moore v. Prindable,* 815 S.W.2d 25, 27 (Mo.App. E.D.1991), the broker's commission agreement stated that the broker was entitled to a commission only if the sale of the subject property occurred within the term of the commission agreement or within ninety days after the agreement expired. In response to the argument that the broker could only *earn* a commission if the sale *closed* within that time frame, the court disagreed and found the broker was entitled to a commission, stating:

> The time requirement in the contract clearly applies to the sale or exchange of the property, not to the closing. We believe the [broker] earned his commission when he produced the purchaser

and the purchaser entered into an earnest money agreement with the appellants. When the contract closed, the right to the commission vested.

*Id.* See also *Hulett–McLean, Inc. v. Chris Kaye Plastics Corp.,* 799 S.W.2d 618, 619 (Mo.App. E.D.1990) ("Unless the contract states otherwise, an agent is entitled to his fee for services performed during the contract period, even though the contingency occurs after termination."); *Shephard v. Hunter,* 508 S.W.2d 234, 238 (Mo.App. 1974) ("[Broker's] right to recover the agreed commission matured upon a showing that he had produced parties ready, willing and able to purchase defendants' property on terms acceptable to them."). A principal cannot break off negotiations with the broker's potential buyer, "take the matter into their own hands, and defeat the broker's right to a commission by concluding the transaction without his aid; the principal cannot take advantage of the broker's work and escape payment of a commission by closing the deal himself." *E.A. Strout Realty Agency, Inc. v. McKelvy,* 424 S.W.2d 98, 101–02 (Mo.App.1968) (internal quotation omitted).

The same is true here. Broker and Landlord entered into a Broker's Commission Letter Agreement in which Broker's right to a commission was *earned* if and when Broker produced Tenant who was ready, willing, and able to enter into a "Lease Amendment for office space in the [Landlord's] building" on terms acceptable to Landlord. Broker did so on December 1, 2008, when the 12/1/08 Lease Amendment was, in fact, entered into between Landlord and Tenant. Upon execution of the 12/1/08 Lease Amendment: the Landlord and Tenant were unconditionally obligated to extend the original lease term by an additional ten-year term; the Landlord and Tenant were unconditionally obligated and bound by the results of the base rent

calculation process itemized by the 12/1/08 Lease Amendment; and the Landlord and Tenant were unconditionally obligated to "execute a written agreement establishing the aforesaid Base Rent" upon conclusion of the base rent calculation process required by the 12/1/08 Lease Amendment.

The execution of the base rent "written agreement" mandated by the 12/1/08 Lease Amendment on July 31, 2009, did not defeat Broker's right to its commission simply because the mandatory base rent agreement was "closed" on a date after the Broker's Commission Letter Agreement expired (i.e., June 3, 2009). The base rent agreement signed by the parties on July 31, 2009, was nothing more than a formality of finalizing, in writing, the results of the base rent calculation process dictated by the 12/1/08 Lease Amendment. Likewise, simply because the "negotiation" aspect of the base rent calculation process (part one of the process) failed in March 2009 does not change the fact that the parties had previously succeeded in "negotiating" the arbitration formula (part two of the base rent calculation process) required to be used in the event that the "part one" voluntary "negotiations" failed. Plainly and simply, Broker *earned* the commission when Landlord and Tenant entered into the 12/1/08 Lease Amendment.

Accordingly, the trial court erred in granting summary judgment to Landlord. Point I of Broker's appeal is granted.

### Point II—Landlord's Affirmative Defenses

In its second point on appeal, Broker argues the trial court erred in refusing to strike Landlord's affirmative defenses (i.e., the basis for Landlord's motion for summary judgment). However, given this court's ruling on Point I, Broker's Point II is moot. *See State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n*, 276 S.W.3d 303, 306 (Mo.App. W.D.2008). We need not and do not, thus, decide the merits of Broker's arguments in Point II of its appeal.

### Point III—Attorney's Fees

■ In its final point, Broker argues the trial court erred in awarding fees and costs to Landlord. Pursuant to the statutory exception[4] of section 429.625, the prevailing party in this case is entitled to the "costs of any proceeding brought to enforce a lien ... including reasonable attorney's fees and prejudgment interest due to the prevailing party." Given this court's ruling on Point I, Landlord is no longer a prevailing party as contemplated by section 429.625. As such, the trial court's judgment awarding attorney's fees and costs to Landlord must be reversed. Point III of Broker's appeal is granted.

### Conclusion

As to Point I, the trial court erred in granting summary judgment to Landlord instead of Broker, and we conclude that Broker is entitled to judgment as a matter of law. Thus, this case is reversed and remanded with instructions to the trial court to enter judgment in favor of Broker consistent with our ruling today. Broker's Point II is denied as moot. Finally, given this court's ruling on Point I, the trial court's award of attorney's fees and costs to Landlord is likewise reversed.

---

4. Generally, Missouri follows the American Rule that each party bears the burden of their own attorney's fees. That general rule is subject to exceptions, however; one of which is if there is an applicable statutory exception authorizing the award of attorney's fees to the prevailing party in certain circumstances. *Milone v. Duncan*, 245 S.W.3d 297, 302 (Mo. App. W.D.2008).

VICTOR C. HOWARD, Presiding Judge, and KAREN KING MITCHELL, Judge, concur.