IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 10, 2020 Session

## ERNEST B. WILLIAMS IV, PLLC ET AL. v. THE ASSOCIATION OF UNIT OWNERS OF THE FIVE HUNDRED AND ONE UNION BUILDING ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 17-966-I   Robert E. Lee Davies, Senior Judge

_____

### No. M2019-02114-COA-R3-CV

_____

This case concerns the termination of a condominium building. At the center of the dispute on appeal is a disagreement over whether the ordered distribution of the proceeds from the sale of the condominium real estate was proper. The Appellant, who was a unit owner in the condominium, takes specific issue with the trial court's use of a certain appraisal as the basis for a distribution of sale proceeds. The trial court ruled against the Appellant on this issue, holding that the subject appraisal became final because it had not been timely disapproved by unit owners representing at least 25% of the votes in the unit owners' association as provided in Tennessee Code Annotated section 66-27-318 of the Tennessee Condominium Act of 2008. In holding that the proposed allocation from the appraisal should be used, the trial court also ordered that the Appellant pay certain attorney's fees and discretionary costs. A request for prejudgment interest against the Appellant, however, was ultimately denied. On appeal, we affirm the trial court's judgment in all respects.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Donald Capparella and Kimberly Macdonald, Nashville, Tennessee, for the appellant, Wolfgang Sauermann.

Jason M. Pannu, Nashville, Tennessee, and Brian S. Faughnan, Memphis, Tennessee, for the appellees, The Association of Unit Owners of the Five Hundred and One Union Building, a Condominium Association, Inc., and Stanley Allen Davis.[1]

---

[1] Attorney William N. Bates of Nashville, Tennessee filed a notice on behalf of the Greater Nashville Regional Council indicating his client's decision to join in and incorporate the brief filed by the

Keene W. Bartley, Nashville, Tennessee, for the appellee, Top Floor Associates, LLP.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

The Appellant Wolfgang Sauermann ("Mr. Sauermann") is a former unit owner in the "501 Building" located at 501 Union Street in Nashville. The Appellees in this matter consist of ten other former unit owners within the 501 Building, as well as the Association of Unit Owners of the Five Hundred and One Union Building, a Condominium Association, Inc. (the "501 Association"). To distinguish between the 501 Association and the association that was previously in place at the 501 Building, we will refer to the latter as the "Original Association" herein. In the same vein, references to the "Original Board" in this Opinion relate to the Board of Directors of the Original Association, whereas references to the "Board" shall relate to the Board of Directors of the 501 Association.

In late 2015, many of the 501 Building's unit owners held informational discussions regarding a potential sale of the building. The following year, on January 27, 2016, the Original Board voted to investigate the sale of the building as a whole and to assemble the information needed to present to the unit owners for their consideration. The Original Board also authorized the Original Association to retain an appraiser to determine the value of the building.

As of December 15, 2015, a former owner of basement units in the building, Gecko Ventures, LLC, was delinquent in association dues to the Original Association in the approximate amount of $55,000.00. Its units were later conveyed to the Original Association by a deed in lieu of foreclosure in April 2016.

In May 2016, Mr. Sauermann sent an email to fellow unit owners advising that an appraisal of the 501 Building had been completed by Robert Pickens. The same month, at a meeting of the Original Board, Mr. Sauermann presented projections which forecasted the approximate net proceeds each unit owner would receive under the Pickens appraisal for various sale prices. At a subsequent June 6, 2016 meeting of the Original Board and some of the unit owners, the unit owners discussed the minimum amounts they would accept for their respective units in the event of a sale of the 501 Building.

The following fall, on November 8, 2016, the unit owners met at a special meeting where they approved the adoption of the Tennessee Condominium Act of 2008 to govern the Original Association and the 501 Building. The unit owners of the Original Association also approved amended and restated bylaws and a name change to the 501 Association,

condominium association and Mr. Davis. With the exception of Top Floor Associates, LLP, the other unit owner Appellees have not filed briefs in this appeal.

- 2 -

and they further agreed to operate the 501 Association as a nonprofit corporation. The Board was also elected, and notice for a second special meeting to take place on November 29, 2016 was approved. An amended and restated declaration for the 501 Association, which was approved at the November 8 meeting, was recorded with the Davidson County Register of Deeds on November 9, 2016.

The ownership interests of the unit owners in the common elements of the 501 Building and the voting interest of the unit owners were allocated in the same manner under the amended and restated declaration as they were in the original declaration of horizontal property regime. Specifically, the ownership interests of the unit owners in the common elements, the voting interest of the unit owners, and the "Grossed Up Percentage Ownership" were allocated as follows:

| Entity / Owner | Percentage Ownership (Declaration) | Grossed Up Percentage Ownership |
|---|---|---|
| Wolfgang Sauermann | 9.4494% | 10.4532% |
| Angela Evans | 3.4588% | 3.8262% |
| Westchester Partners | 3.4588% | 3.8262% |
| TOSS | 3.7165% | 4.1114% |
| David Downard | 2.9493% | 3.2626% |
| Aubrey Givens | 3.2071% | 3.5478% |
| Stan Davis | 13.3317% | 14.7479% |
| Audrey Anderson | 3.7165% | 4.1114% |
| Richard Braun | 9.6152% | 10.6366% |
| GNRC | 23.2046% | 25.6696% |
| Top Floor | 14.2892% | 15.8071% |
| 501 Association Basement Units | 9.6029% | |
| TOTALS | 100.00% | 100.00% |

At the scheduled second special meeting on November 29, 2016, over 80% of the members of the 501 Association agreed to sell the 501 Building and to terminate the 501 Building as a condominium and the 501 Association. It was further agreed that the 501 Association was authorized to enter into a listing agreement with Colliers International as the seller's broker, and Mr. Sauermann was given approval to perform services as an owners' representative and to be compensated with a referral fee, payable out of the brokerage fee.

The 501 Association ultimately agreed to sell the 501 Building to 501 Union Level Office, LLC for $8,850,000. Moreover, in an effort to comply with the Tennessee Condominium Act of 2008, specifically Tennessee Code Annotated section 66-27-318, the 501 Association retained Mr. Pickens again to perform an updated appraisal. Under the foregoing statutory section, proceeds of a sale must be distributed in accordance with a valuation made "immediately before the termination, as determined by one (1) or more independent appraisers selected by the association." *See* Tenn. Code Ann. § 66-27-318(e),

(h)(1). Mr. Pickens later prepared an appraisal, which was dated July 31, 2017.

Upon receipt of the Pickens appraisal, which was sent out to all unit owners on August 12, 2017, disputes arose almost immediately concerning the valuations. In the meantime, on August 14, 2017, the sale of the 501 Building to 501 Union Level Office, LLC closed.

As is relevant here, the Tennessee Condominium Act of 2008 provides that "[t]he decision of the independent appraisers . . . becomes final unless disapproved within thirty (30) days after distribution by unit owners of units to which at least twenty-five percent (25%) of the votes in the association are allocated." Tenn. Code Ann. § 66-27-318(h)(1). On August 29, 2017, a meeting of several unit owners was held by telephone. During the meeting, Westchester Partners, the Greater Nashville Regional Council, the Tennessee Organization of School Superintendents, Stanley Davis, and Top Floor Associates, LLP decided they would formally disapprove the Pickens appraisal. It is undisputed that these particular parties disapproved the appraisal within 30 days of its distribution.[2]

In recognition of the fact that the appraisal had been disapproved by substantially more than the requisite statutory threshold of association votes, Mr. Sauermann, who was then a Board member, emailed the 501 Association's then-President, Angela Evans, on August 30, 2017, stating in relevant part as follows:

> [W]e will have to order a new appraisal. The Board can approve the terms and conditions for ordering an independent appraisal to comply with the Statute. The new appraisal will have to be performed based on the status of the 501 Building and the Market Conditions as of 7/31/2017 or before the closing of the sale.

Ms. Evans resigned from the Board on August 30, 2017, and on September 1, 2017, other Board members asked Mr. Sauermann to resign from the Board as well. He agreed to do so.

In light of the lack of a resolution then existing concerning how the proceeds from the sale of the 501 Building were to be distributed, the present litigation was commenced in the Davidson County Chancery Court by way of the filing of a "Petition for Interpleader" by Ernest B. Williams IV, PLLC and its subsidiary American Realty Title, LLC. These parties were identified in the petition as the 501 Association's attorneys and escrow agent, respectively. Named as Respondents were the eleven former unit owners, including Mr. Sauermann, and the 501 Association. The Petitioners stated that they sought "to interplead the net sale proceeds into Court for the Court to determine the amount of each of the

---

[2] We note that there was an allegation in this case that Mr. Sauermann improperly influenced Mr. Pickens in connection with the appraisal.

Respondents' right to, interest in and proportionate claim to the net sale proceeds." In a subsequently-entered "Agreed Order Depositing Sale Proceeds Into Court Registry," the trial court ordered the sale proceeds remaining in the Petitioners' possession be deposited into court and held that "Petitioners shall be discharged from all liability, claims, actions, and causes of action of any nature regarding the Sale Proceeds." The record reflects that the funds from the closing were in fact later deposited by the Petitioners into court.

While the interpleader action was pending, the Board approved the 501 Association to obtain quotes from three independent appraisal firms to conduct a new appraisal of the 501 Building. The Board also approved a protocol for the appraisal. From the three proposals ultimately received, the Board chose Colliers International to conduct the new appraisal.

The report prepared by Colliers International (the "Colliers Appraisal"), which was dated November 2, 2017, was sent to all unit owners via email on November 6, 2017. A hard copy was also mailed via U.S. Mail. In contrast to the last appraisal prepared by Mr. Pickens, the Colliers Appraisal was *not* disapproved by 25% of the unit owner votes. In fact, the following unit owners signed a ballot to approve the Colliers Appraisal: Top Floor Associates, LLP, Stanley Davis, the Greater Nashville Regional Council, Aubrey Givens, Richard Braun, David Downard, Angela Evans, Westchester Partners, and the Tennessee Organization of School Superintendents.

On November 17, 2017, the 501 Association moved the trial court to approve the Colliers Appraisal. Thereafter, on November 29, 2017, Mr. Sauermann filed an answer to the interpleader petition and a cross-claim, asserting that the effort to approve the Colliers Appraisal was violative of the Tennessee Condominium Act because the majority of unit owners had "gang[ed] up" on him "by disapproving an appraisal favorable to him and then ordering another appraisal . . . until one is . . . obtained that values Mr. Sauermann's unit(s) low enough to please the majority."

Following a trial, in a memorandum order dated July 16, 2018, the trial court approved the Colliers Appraisal's proposed allocation of sale proceeds. In relevant part, the trial court stated as follows:

> Mr. Sauermann contends he has the right to challenge the Colliers' appraisal on methodology or defects by comparing it to the disapproved Pickens appraisal or to an appraisal which he ordered. Mr. Sauermann contends he has the inherent right to challenge an appraisal which was not disapproved by unit owners to which at least 25% of the votes in the Association are allocated. The Court disagrees.
>
> There is nothing in the condominium statute which provides a unit owner or group of unit owners, who are unable to muster 25% of the votes

to disapprove an appraisal, to challenge the unit owners, to which at least 75% of the votes in the Association are allocated, who do not vote to disapprove the appraisal. Any argument regarding the appraiser's methodology or defects, must take place within thirty days after the distribution of the appraisal to the unit owners, and then those unit owners who are dissatisfied must convince enough unit owners to which at least 25% of the votes in the Association are allocated to vote to disapprove the appraisal.

. . . .

The Colliers' appraisal was not disapproved within thirty days after distribution by unit owners representing 25% of the votes in the Association; therefore, the Colliers' appraisal has become "final."

(internal footnotes omitted). In the conclusion of its order, the trial court held that Mr. Sauermann would be responsible for attorney's fees, costs, and expenses that would be determined at a later hearing.

On October 31, 2018, the trial court entered an order awarding certain discretionary costs, attorney's fees, and prejudgment interest against Mr. Sauermann. The award of prejudgment interest was later vacated, and on October 30, 2019, the trial court entered its "Final Judgment," wherein the distributions awarded to each party were detailed. Although the trial court subsequently ordered that its judgment would be stayed upon the posting of a $2,000,000 bond by Mr. Sauermann, the requisite bond was never filed. This appeal followed.

## ISSUES PRESENTED

This appeal presents several issues for our review. Mr. Sauermann challenges the trial court's reliance on the Colliers Appraisal and the court's awards of attorney's fees and discretionary costs. The 501 Association and Stanley Davis, as Appellees, challenge the trial court's ultimate denial of prejudgment interest. For its part, Appellee Top Floor Associates, LLP, maintains that it should receive attorney's fees in connection with its defense of this appeal.

## DISCUSSION

*Justiciability*

The appeal by Mr. Sauermann challenges the propriety of the trial court's reliance on the Colliers Appraisal, as well as the court's award of attorney's fees and discretionary costs. As a threshold consideration, however, we must address an issue raised in the brief

- 6 -

filed by the 501 Association and Stanley Davis challenging the justiciability of this dispute. According to the argument set forth by the 501 Association and Mr. Davis, the case is now moot due to Mr. Sauermann's failure to post the bond set by the trial court. These Appellees reason that because the proceeds of the sale have now been distributed in the absence of a bond, Tennessee Code Annotated section 66-27-318(e) supports the notion that the "501 Association no longer exists." There is no question that the statutory section referenced by the 501 Association and Mr. Davis provides that "the association continues in existence" until the sale proceeds have been distributed. Tenn. Code Ann. § 66-27-318(e). Respectfully, however, we do not consider this statutory section to compel the conclusion that the 501 Association should be considered non-existent under the present context. The sale proceeds may well have been distributed by dint of Mr. Sauermann's failure to post a bond,[3] but there is a live controversy as to how the sale proceeds should be allocated among the unit owners. Mr. Sauermann is not required to post a bond for a stay to pursue an appeal on that question, *see Sec. Bank & Trust Co. of Ponca City, Okl. v. Fabricating, Inc.*, 673 S.W.2d 860, 866 (Tenn. 1983) ("The right to appeal is not conditioned upon the filing of a bond for stay."), and if he is successful herein, it would necessarily follow that the prior ordered distribution was not the final one. As we construe the statute, the 501 Association exists until there is a final conclusion on the distribution of the sale proceeds. *See* Tenn. Code Ann. § 66-27-318(e) ("Until the sale has been concluded and the proceeds thereof distributed, the association continues in existence with all powers it had before termination."). Additionally, despite the justiciability argument offered by the 501 Association and Mr. Davis, we note that their counsel effectively admitted at oral argument that the 501 Association still exists for certain purposes. Indeed, when answering a question from a member of the judicial panel, counsel agreed that the 501 Association could receive and distribute funds if attorney's fees were awarded. We therefore reject the invitation to hold that the 501 Association no longer exists so as to establish that the other questions presented to us are moot.

*Propriety of the Trial Court's Reliance on the Colliers Appraisal*

Having dispensed with the above issue, we now turn our attention to the heart of the dispute among the parties, i.e., whether the Colliers Appraisal was properly utilized in determining how the condominium sale proceeds should be allocated among the unit

---

[3] Although we might speculate that a distribution of proceeds has in fact occurred given that Mr. Sauermann does not specifically contest this alleged fact by way of his reply brief, the factual predicate for the justiciability argument (the distribution of proceeds) has, to our knowledge, never been properly substantiated by the 501 Association and Mr. Davis on appeal. Specifically, their brief provides no citation to support their factual assertion (which is unsurprising given that it relates to something that would have occurred post-judgment), nor have they filed a motion for this Court to consider post-judgment facts relating to the matter. This alone would countenance against their request for relief, even assuming *arguendo* that we were persuaded by the legal argument. Rule 14 of the Tennessee Rules of Appellate Procedure instructs that a motion "to consider post-judgment facts . . . shall be made in the manner provided in Rule 22." Tenn. R. App. P. 14.

owners.  In our view, the necessary question that is squarely presented pertains to the trial court's conclusion that the Colliers Appraisal became final when it was not disapproved within thirty days after distribution by unit owners representing 25% of the votes in the 501 Association.  As previously outlined, the trial court held that if Mr. Sauermann wanted to challenge the Colliers Appraisal from becoming final, it was incumbent upon him to marshal at least 25% of the votes in the 501 Association to disapprove the appraisal, stating:

> There is nothing in the condominium statute which provides a unit owner or group of unit owners, who are unable to muster 25% of the votes to disapprove an appraisal, to challenge the unit owners, to which at least 75% of the votes in the Association are allocated, who do not vote to disapprove the appraisal.  Any argument regarding the appraiser's methodology or defects, must take place within thirty days after the distribution of the appraisal to the unit owners, and then those unit owners who are dissatisfied must convince enough unit owners to which at least 25% of the votes in the Association are allocated to vote to disapprove the appraisal.

We agree with the trial court that the subject appraisal became final when it was not disapproved "by unit owners of units to which at least twenty-five percent (25%) of the votes in the association are allocated."  Tenn. Code Ann. § 66-27-318(h)(1).  The Code expressly provides for a thirty-day window after distribution of the appraisal for such disapproval to occur, *id*., signaling a clear legislative intent that the distribution of proceeds of sale not be prolonged if the overwhelming majority of owners has no opposition to the ordered appraisal.  That is, at least 25% of association votes must timely disapprove the appraisal in order to prevent it from becoming final and serving as the basis for distribution.  Sensibly, the legislature included this provision to ensure that the distribution of proceeds of sale is not held up by a small faction of votes.

Here, the requisite statutory threshold for disapproving the Colliers Appraisal was never met.  According to Barbara Perutelli, who testified that she had been elected as a Board member, the 501 Association received no disapprovals in response to the distribution of the Colliers Appraisal.  Hope Jackson, who testified she was the Vice President of the Board when Colliers International was hired, echoed the same.  Moreover, during his own testimony, Mr. Sauermann admitted that he took no action to disapprove the Colliers Appraisal and stated that he did not even talk to other unit owners to see if he could marshal votes for the statutory 25% disapproval threshold.  When Mr. Sauermann initially voiced an objection in this litigation to the Colliers Appraisal, via his cross-claim, his interposed argument accused other unit owners of "gang[ing] up" on him and disclaimed the ability of the "association or its Board from imposing or adopting an interpretation of the termination statute that would allow some of the unit owners, even if in the majority, to obtain additional appraisals after the initial appraisal is disapproved."  Notably, this particular grievance of Mr. Sauermann's is no longer being pursued by him on appeal, and

of course, it was inconsistent with his own previously expressed understanding of the termination statute. Indeed, as we noted earlier in this Opinion, after the updated Pickens appraisal was disapproved, Mr. Sauermann emailed Angela Evans stating, "[W]e will have to order a new appraisal."

In summary, based on the fact that the Colliers Appraisal was not disapproved by the requisite 25% of the voting power, it became final under the statute. *See id.* (stating that the decision of the appraiser "becomes final unless disapproved within thirty (30) days after distribution by unit owners of units to which at least twenty-five percent (25%) of the votes in the association are allocated"). We conclude, therefore, that the trial court committed no error in relying upon the Colliers Appraisal when ordering a distribution of sale proceeds.

*Attorney's Fees and Discretionary Costs*

As for Mr. Sauermann's issue pertaining to the discretionary costs awarded, his argument on appeal merely requests for a reversal of the trial court's award of those costs *if* we reverse the trial court's ruling that the Colliers Appraisal was final.[4] Having not reversed the trial court's ruling on the finality of the subject appraisal, it follows that no relief is available to Mr. Sauermann on this issue. His asserted issue and argument on the trial court's award of attorney's fees, however, is broader. He argues that "even if this Court affirms the trial court's ruling approving the Colliers Appraisal as 'final,' this Court should still reverse the trial court's award of attorney's fees." The trial court's award of attorney's fees was predicated upon Paragraph 17 of the 501 Association's amended and restated declaration, which provides, among other things, that when a unit owner uses or attempts to use "judicial process" to object to the determination regarding his unit's value, "then the prevailing party in such judicial proceeding shall be entitled to recover from the non-prevailing party all costs and expenses incurred by the prevailing party, including but not limited to court costs and reasonable attorneys' fees." There is no question here that Mr. Sauermann was unsuccessful and did not prevail in his efforts to convince the trial court that the Colliers Appraisal's determination of his unit's value should not be used, but according to his argument on appeal, the provision in Paragraph 17 of the amended and restated declaration does not apply. Mr. Sauermann submits that the "attorney's fee provision . . . is in direct conflict with the [condominium] Act." Specifically, he reasons that because the statute contains provisions encouraging litigation by parties who believe they are harmed by violations of the Tennessee Condominium Act, Paragraph 17's fee provision deprives him of his statutory rights. Respectfully, we discern no "direct conflict" or deprivation of statutory rights. Indeed, although Mr. Sauermann insinuates that the subject fee provision "has the purpose of sanctioning any unit owners who attempt to challenge any misapplication of the Act," this is simply not the case. The award of attorney's fees did not result from the mere decision of Mr. Sauermann to challenge the

---

[4] No objection is otherwise made with respect to the propriety of the specific costs awarded.

validity of using the Colliers Appraisal. Rather, attorney's fees were awarded when Mr. Sauermann was unsuccessful in his challenge.

Mr. Sauermann also contends he did not use "judicial process." In support of his position, he notes that the parties were brought into the trial court by interpleader and appears to construe "judicial process" here as merely signifying a writ. Although we have no quarrel with the notion that a writ meets the definition of process, there is a potential broader meaning for "judicial process" as well:

> In its broadest sense [process] is equivalent to, or synonymous with, "procedure," or "proceeding." Process is action taken pursuant to judicial authority, and may be defined as the means whereby a court compels a compliance with its demands.
>
> "Process" and "writ" or "writs" are synonymous, in the sense that every writ is a process, and in a narrow sense of the term "process" is limited to judicial writs in an action, or at least to writs or writings issued from or out of a court, under seal and returnable to the court. However, it is not always necessary to construe the term so strictly as to limit it to a writ.

72 C.J.S. Process § 1 (internal footnotes omitted). Here, we are of the opinion that a broad meaning of "judicial process" is contemplated by the attorney's fee provision. Specifically, we observe that the "such judicial proceeding" language in the provision refers back to "judicial process," confirming the notion that a narrow reading is not supportable as Mr. Sauermann advocates. We accordingly affirm the trial court's judgment on this issue and further order that the case be remanded for a determination of attorney's fees incurred in this appeal by Top Floor Associates, LLP.[5]

*Prejudgment Interest*

In closing, we turn to the request by the 501 Association and Stanley Davis that this Court reverse the trial court's ruling on prejudgment interest. When it ultimately ruled to deny prejudgment interest in this case, the trial court reasoned that "[a]warding interest . . . would amount to a penalty against Mr. Sauermann." Noting the nature of the interpleader action before it, the trial court observed, among other things, that the funds deposited into the court had not been in Mr. Sauermann's possession. In our opinion, contrary to the position advanced by the 501 Association and Mr. Davis on appeal, we agree with Mr. Sauermann that no reversible error exists on this issue.

By statute,

---

[5] This is the only party who requested appellate attorney's fees.

[p]rejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, *may be* awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum.

Tenn. Code Ann. § 47-14-123 (emphasis added). As is clear, the award of prejudgment interest is not a compulsorily obligation of the trial court. The issue "is within the sound discretion of the trial court and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

In our view, the trial court's decision to deny prejudgment interest does not reflect a manifest abuse of discretion, but rather, it reflects a thoughtful consideration of the nature of the case and the fact that Mr. Sauermann himself had no use of the subject funds. Many courts have held that prejudgment interest is improper in the context of an interpleader suit. Referencing other authority, the Missouri Court of Appeals offered support for this understanding as follows:

> In *Bevins v. Peoples Bank and Trust Co.,* 671 P.2d 875 (Alaska 1983), the Alaska Supreme Court addressed the issue of awarding prejudgment interest in interpleader actions:
>
> > The purpose of awarding prejudgment interest is not to penalize the losing party, but rather to compensate the successful claimant for losing the use of the money between the date he or she was entitled to it and the date of judgment. A corollary purpose is to prevent the judgment debtor from being unjustly enriched by the use of that money.... Prejudgment interest should not be awarded, however, when it is unjust to do so....
> >
> > As a general rule, interest on funds deposited with the court in interpleader actions is not recoverable from the unsuccessful claimant because the funds were not in his or her possession, available for investment. Awarding interest would thus act as a penalty against the claimant.
>
> *Bevins,* 671 P.2d at 881. We also note that, in an interpleader action, the judgment is against the fund, not the other parties to the action. *Winterton v. Van Zandt,* 397 S.W.2d 693, 695 (Mo.App., K.C.Ct.App.1965). This presents yet another reason for denying prejudgment interest awards against other parties in interpleader actions. *Id.*

Finally, the funds have been in the registry of the court for almost the entire time for which interest was awarded. As a general rule, interest should never be awarded for time a fund is on deposit in the registry of the court.

*Moore v. Prindable*, 815 S.W.2d 25, 28 (Mo. Ct. App. 1991).

Our own statute on prejudgment interest, as noted above, equates such interest as "interest as an element of, or in the nature of, *damages*." Tenn. Code Ann. § 47-14-123 (emphasis added). Of course, given the nature of the interpleader action here, the subject funds Mr. Davis and the 501 Association assert that they were deprived of were not awarded to them as damages payable by Mr. Sauermann. As the trial court accurately noted, these funds were not in Mr. Sauermann's possession. Because we do not discern any abuse of discretion on the part of the trial court here, we affirm its denial of prejudgment interest and reject the Appellees' call that we assess prejudgment interest against Mr. Sauermann.

## CONCLUSION

For the reasons stated herein,[6] we hereby affirm the trial court's judgment and remand the case for a determination of reasonable attorney's fees incurred on appeal by Top Floor Associates, LLP and for such other matters as may be necessary and are consistent with the Opinion.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE

---

[6] To the extent any arguments made by the parties in this appeal have not been specifically addressed herein, they are pretermitted as unnecessary to the resolution of this dispute.